UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS MACARTHUR GUILE,

    Petitioner,

v.

CONNIE HORTON,

    Respondent,
_____/

Civil No. 2:19-CV-11612
HONORABLE VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Douglas Macarthur Guile, ("Petitioner"), confined at the Alger Correctional Facility in Munising, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through counsel, Kevin L. Laider. Petitioner challenges his conviction for armed robbery, Mich. Comp. Laws § 750.529.

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. Background**

A jury convicted Petitioner in Genesee County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> This case arises from a brutal robbery of a McDonald's restaurant on June 24, 2002, in which the perpetrator, later identified by numerous witnesses as defendant, repeatedly threatened to kill employees if they failed to comply with his demands. Wrapping a BB gun in a towel such that only the barrel

1

was visible to the employees, defendant brandished the weapon, referring to it as an Uzi when threatening to shoot the employees. At one point, defendant placed the gun to the back of the restaurant manager's head while demanding money. After leaving the McDonald's with proceeds from the robbery, defendant was confronted by an off-duty police officer who momentarily subdued defendant before a distraction allowed defendant to flee. After refusing to comply with several demands to halt, defendant was shot in the leg by the off-duty officer during the ensuing chase. In the midst of the foot pursuit, defendant had been able to outrun the officer and successfully climbed a six-foot fence. Despite the gunshot wound, defendant was able to reach a vehicle he had borrowed from a friend, but he crashed soon thereafter and was apprehended by other responding police officers. Video surveillance cameras produced footage and still photographs that, while apparently not clearly showing defendant's face, revealed that the perpetrator was dressed consistently with defendant's appearance upon arrest.

Defendant was convicted of the armed robbery by a jury and sentenced by the trial court in September 2002. Following a denial by this Court in 2003 of a delayed application for leave to appeal, a subsequent denial by the trial court of a motion for relief from judgment brought in 2011 under MCR 6.501 *et seq.,* and a later denial by this Court of an application for leave relative to the rejected motion for relief from judgment, the Michigan Supreme Court finally remanded the case to the trial court solely "for an evidentiary hearing and reconsideration of the issue whether the time in which to file an appeal of right should be restarted pursuant to MCR 6.428." *People v. Guile*, 495 Mich. 888; 838 NW2d 882 (2013). After a hearing in the trial court, and upon stipulation of the parties, the court issued an order restarting the time to perfect an appeal of right, and an appeal to this Court ensued. This Court preliminarily granted defendant's motion to remand for a *Ginther* hearing related to his request for a new trial predicated on a claim of ineffective assistance of counsel as to the defense of voluntary intoxication negating specific intent. *People v. Guile*, unpublished order of the Court of Appeals, entered April 10, 2014 (Docket No. 319939). On remand, the trial court conducted the *Ginther* hearing and denied defendant's motion for new trial. The trial court indicated that there was strong evidence at trial that defendant's actions during the robbery were goal-oriented and did not reflect that he was intoxicated, through the consumption of drugs and alcohol, to such an extent that he could not form the requisite specific intent to commit armed robbery. The trial court further stated that defendant's trial counsel did not have to employ an expert to present an intoxication defense, given that lay witnesses were generally capable of supporting such a defense. Finally, the trial court observed that defense counsel did not commit any errors that

affected the outcome of the trial; rather, it was defendant's own behavior, as demonstrated by the testimony and video, that led to his conviction. The case is now before us as of right.

*People v. Guile*, No. 319939, 2015 WL 3604571, at * 1 (Mich. Ct. App. June 9, 2015)(internal footnotes omitted).

The conviction was affirmed. *Id. lv. den.* 498 Mich. 950, 872 N.W. 2d 464 (2015).

Petitioner filed a post-conviction motion for relief from judgment; the motion was denied. *People v. Guile,* No. 02-010240-FC (Genesee Cty.Cir.Ct., May 23, 2017). The Michigan appellate courts denied leave to appeal. *People v. Guile,* No. 341529 (Mich.Ct.App. May 18, 2018); *lv. den.* 503 Mich. 954, 923 N.W. 2d 261 (2019); *reconsideration den.* ---- Mich.----, 927 N.W. 2d 244 (2019).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) ineffective assistance of trial counsel for failing to properly investigate, prepare, or present an intoxication defense, (2) ineffective assistance of appellate counsel for failing to properly challenge the scoring of Offense Variable 7 of the Michigan Sentencing Guidelines and the Michigan Court of Appeals' findings, and (3) ineffective assistance of appellate counsel for failing to raise a prosecutorial misconduct claim premised on a misstatement in the prosecutor's brief on appeal.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at

103. Habeas relief should be denied as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

Petitioner's second and third claims were raised in his post-conviction motion for relief from judgment. In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F. 3d 487, 505 (6th Cir. 2010)(quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)). The Michigan Court of Appeals and the Michigan Supreme Court both denied Petitioner's post-conviction application for leave to appeal in unexplained one-sentence orders. Accordingly, this Court must "look through" these decisions to the Genesee County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion. Then, the Court can decide whether that court's adjudication of Petitioner's claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x. 501, 505 (6th Cir. 2011).

### III. Discussion

Petitioner alleges he was denied the effective assistance of trial and appellate counsel.

To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective

5

assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner alleges that trial counsel was ineffective for failing to properly investigate, prepare, or present a defense of lack of specific intent to commit the armed robbery due to voluntary intoxication resulting from the consumption of drugs and alcohol.

At the time of Petitioner's trial, voluntary intoxication was a defense to specific intent crimes in Michigan. See *People v. Langworthy,* 416 Mich. 630, 331 N.W. 2d 171 (1982). The voluntary intoxication defense was abrogated on September 1, 2002 by 2002 PA 366, which was codified at Mich. Comp. Laws § 768.37 (1), which provides, that "it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor, drug, including a controlled substance, other substance or compound, or combination of alcoholic liquor, drug, or other substance or compound."

Michigan no longer recognizes a voluntary intoxication defense. In *Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993), the U.S. Supreme Court held that when a lawyer fails to raise "an objection that would have been supported by a decision which subsequently was overruled," a defendant cannot show that he or she was prejudiced for purposes of the *Strickland* test. In such a case, it is improper for a reviewing court to focus on "mere outcome determination," because the result of the proceeding was not fundamentally unfair or unreliable. *Id.* at 369. The U.S. Supreme Court concluded that "[T]o set aside a

conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Id.* at 369-370 (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

Petitioner is no longer entitled under Michigan law to raise a defense of voluntary intoxication. To grant Petitioner a new trial based upon trial counsel's alleged inadequacies in investigating or presenting an intoxication defense would grant Petitioner a windfall to which he is not entitled. Nonetheless, out of an abundance of caution, the Court addresses the merits of Petitioner's claim.

Federal courts have rejected ineffective assistance of counsel claims for failure to raise an intoxication defense on the ground that the level of intoxication needed to negate specific intent is so high that the defense is rarely successful. *Evans v. Meyer*, 742 F. 2d 371, 374 (7th Cir. 1984); *Wilen v. Wainwright*, 793 F. 2d 1190, 1194 (11th Cir. 1986); *See also Vinson v. McLemore,* 226 F. App'x. 582, 585 (6th Cir. 2007)(trial counsel's alleged conduct in relying on self-defense as defendant's only theory of acquittal, rather than investigating and pursuing voluntary intoxication defense, was reasonable trial strategy, and therefore was not ineffective assistance of counsel; trial counsel explained at evidentiary hearing he never used alcohol as a defense and had never known of it being successful and that jurors ordinary did not like the argument that a defendant was too drunk to know what he was doing).

Petitioner argues that trial counsel was ineffective for failing to call family members to testify about Petitioner's history of alcohol and drug abuse. The Michigan Court of Appeals rejected the claim:

7

> With respect to the failure to call defendant's family members to the stand, none of them were with defendant in the days leading up to the robbery, nor were they present at the scene. While testimony by family members may have confirmed defense counsel's argument that defendant had a long history of drug and alcohol abuse, a history of such abuse is not in itself a defense to armed robbery. The evidence may have had some minimal probative value, MRE 401, but not to the extent that defense counsel's failure to call family members to testify amounted to deficient performance, nor to the extent that any prejudice resulted from the absence of their testimony.

*People v. Guile*, 2015 WL 3604571, at * 4.

The Michigan Court of Appeals' rejection of Petitioner's claim was reasonable, precluding habeas relief. None of Petitioner's family members were able to offer relevant testimony in support of Petitioner's intoxication defense since none was present at the scene of the robbery; counsel was not ineffective for failing to present their testimony. *See e.g. Winborn v. United States*, 602 F. App'x. 298, 301-02 (6th Cir. 2015)(defendant was not prejudiced by trial counsel's failure to subpoena defendant's wife and secure her testimony about defendant's purported intoxication at time of his confession and the effects of hydrocodone intoxication, as required to support a claim of ineffective assistance of counsel, where testimony was irrelevant, in that wife had no knowledge of circumstances surrounding defendant's confession and she was not qualified as expert in hydrocodone intoxication).

Petitioner argues that trial counsel was ineffective for failing to call an expert in support of his intoxication defense. The Michigan Court of Appeals rejected this claim:

> With respect to the argument concerning defense counsel's failure to call an expert in support of the intoxication defense, defendant relies on the opinion of a forensic and clinical psychologist who prepared a report and testified at the *Ginther* hearing in support of the defense. The expert concluded that

defendant was likely extremely intoxicated when committing the armed robbery and that in such a state defendant would not have been capable of forming the requisite specific intent. The expert reviewed and relied on various materials in reaching his opinion, including the presentence investigation report (PSIR), the police report, and transcripts of some of the trial testimony, giving particular attention to the testimony of defendant's friend regarding heavy drug and alcohol use prior to the robbery. Ultimately, the foundation of the expert's opinion was primarily defendant's self-written version of the offense as set forth in an attachment to the PSIR. Defendant wrote that, for several days leading up to the robbery, he had been drinking alcohol and smoking crack cocaine almost nonstop. He claimed that he had not slept in days and was on edge because a drug dealer to whom he owed money was looking for him. Defendant maintained that this fear, coupled with the drinking, the drugs, and the lack of sleep left him tired, nervous, desperate, and confused. Defendant claimed that after being turned away by a nearby hotel, he ended up at the McDonald's and went to use the restroom to freshen up. But once in the restroom, he smoked a large piece of crack cocaine and then went into the main lobby of the restaurant "in a state of delusion and paranoia." He could not recall anything as to what transpired thereafter inside the McDonald's in relationship to the robbery, but he did remember being confronted, chased, and shot by the off-duty officer after exiting the restaurant.

Predominantly on the basis of defendant's written statement, the expert, who estimated that he had testified in court over 400 times, opined that defendant, due to extreme intoxication, had experienced a partial blackout, had a distorted perception, and was cognitively impaired. The expert was asked about defendant's "seemingly goal directed behavior" during the course of the robbery as testified to by all of the witnesses, and the expert responded, "That's common in blackouts that people behave in ways that are not noticeable to others." The expert elaborated that forensic psychology recognizes "[t]hat because a person looks like they're behaving in a goal directed way doesn't mean that they're making the same kind of thoughtful problem solving judgments ... [or] decisions[,] or [are] able to pay attention to things in the same way as someone who is not." On cross-examination, the expert conceded that he did not know how much cocaine or alcohol defendant had actually used or consumed, acknowledging that there was no scientific evidence of intoxication, such as the results of a blood alcohol test. He further conceded that many of the actions taken or statements made by defendant during and after the robbery that the expert relied on as supporting the expert's theory and opinion, e.g., not responding to clear demands of law enforcement, could also have simply reflected conduct and communications

9

typical of a sober person committing an armed robbery and attempting to successfully escape a pursuit. The expert ultimately admitted that he could not state to a scientific certainty what defendant's intent was in 2002.

One of the problematic aspects of the expert's opinion is the reliance on defendant's written statement attached to the PSIR. The PSIR and defendant's statement were prepared after the trial, and defendant did not testify at the trial. Had an expert been called to testify at trial, we fail to see how the expert could have provided an opinion favorable to defendant based on claims and assertions made by defendant absent defendant having taken the stand and subjecting himself to cross-examination, which he chose not to do. An expert's opinion must be "based upon sufficient facts or data." MRE 702. And MRE 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence. This rule does not restrict the discretion of the court to receive expert opinion testimony subject to the condition that the factual bases of the opinion be admitted in evidence thereafter.

The expert's partial blackout theory and opinion on specific intent would not have been sufficiently supported by facts as required by MRE 702 without the introduction of evidence of claims like those made by defendant in his post-trial-PSIR version of the offense, which could only have come to fruition by defendant taking the witness stand. The other evidence relied on by the expert, e.g., defendant's inaccurate reference to a person being his sister when initially subdued by the off-duty officer and defendant's vague reference at the hospital that he dreamed or worried about being stopped by an off-duty officer, did not suffice to support the expert's opinion. The expert's opinion was heavily dependent on defendant's contention that he was in a state of delusion and paranoia and, most importantly, that he could not recall committing the robbery. And it would be entirely too speculative for us to surmise that defendant would have taken the witness stand and testified had an expert been procured for trial in 2002. Indeed, defendant makes no such claim in his appellate brief. Accordingly, we cannot conclude that an expert would have even been permitted to testify on defendant's behalf at trial, let alone conclude that defense counsel was deficient in his performance by not calling an expert to testify. Defendant has not shown that he was deprived of a substantial defense.

> We further note that an expert was not a necessity in arguing the intoxication defense, considering that, for purposes of MRE 701, lay witnesses are generally permitted to testify regarding personal observations of intoxicated behavior and as to their opinion concerning whether a person was intoxicated, as formed by their observations. Accordingly, trial counsel's strategy to employ the testimony of lay witnesses in an effort to establish intoxication and negate specific intent was not unreasonable.
>
> Moreover, defendant's expert, even with the benefit of defendant's version of the offense as attached to the PSIR, had to concede that he did not know how much alcohol and drugs defendant had actually consumed, that defendant's conduct and communications could be interpreted in a manner inconsistent with the intoxication defense, and that he could not state to a scientific certainty what defendant's intent had been at the time. Ultimately, the expert's opinion was overly speculative such that we cannot conclude that defendant has established deficient performance on the part of defense counsel for failing to call an expert witness to testify. Even assuming deficient performance, there was a mountain of evidence showing that defendant committed the armed robbery with the intent to permanently deprive the restaurant of its money. And defendant simply cannot show the existence of a reasonable probability that, but for counsel's assumed error, defendant would have been acquitted. Every movement made and word spoken by defendant during and after the robbery reflected an intent to permanently deprive McDonald's of its property, and there is not an adequate basis to find that defendant's use of alcohol or drugs clouded his ability to form that intent.

*People v. Guile*, 2015 WL 3604571, at * 4–6 (internal citations and footnotes omitted).

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006). The Michigan Court of Appeals, in a footnote, indicated that they could only speculate whether Petitioner could have found an expert in 2002 to testify that Petitioner was too intoxicated to form the intent to commit the armed robbery:

11

> For purposes of our analysis, we are making the assumption that either the expert hired by defendant to testify at the 2014 *Ginther* hearing would have been the expert to testify at defendant's trial in 2002 or that a different expert could have testified in 2002, but in a manner consistent with the view and opinion of defendant's present expert. The reality is that we can only speculate whether defendant in 2002 could have actually located an expert prepared to testify on defendant's behalf, even if counsel made an effort to find such an expert.

*People v. Guile*, 2015 WL 3604571, at * 5, n. 6.

Petitioner was able to obtain an expert nine years after the fact to support his intoxication defense. [1] This expert based his opinion primarily on a statement that Petitioner made in his pre-sentence investigation report after he had been convicted. The Michigan Court of Appeals ruled that unless Petitioner testified at trial, there would have been no evidence to support an expert's testimony that Petitioner was too intoxicated to form the intent to commit the crime. Petitioner offered no evidence to this Court that there was an expert at the time of his trial who would have been willing to testify that Petitioner's alcohol and drug consumption prevented him from forming the intent to commit the armed robbery. Petitioner is not entitled to habeas relief because he failed to show that there was an expert who could have testified conclusively at the time of Petitioner's trial that he was too intoxicated to possess the intent to commit the crime. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005).

In addition, Petitioner's own expert admitted on cross-examination that he did not know how much alcohol or drugs that Petitioner consumed. The expert conceded that

---

[1] See ECF No. 1-16, Page ID. 183-86.

Petitioner's actions at the time of the crime may not have been consistent with an intoxication defense. Any expert called by the defense in support of an intoxication defense could have easily been impeached with evidence showing a purposeful intent on Petitioner's part to commit an armed robbery; counsel was not ineffective in not calling an expert to support the intoxication defense. *Cf. Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)(counsel's failure to investigate expert prior to presenting his testimony constituted ineffective assistance of counsel in murder prosecution; expert was called to testify that defendant was too intoxicated at time of murder to form intent to kill, but stated on cross-examination that defendant was capable of acting purposefully despite such intoxication).

Moreover, trial counsel's decision to present an intoxication defense through lay witnesses was a reasonable decision that defeats Petitioner's ineffective assistance of counsel claim. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *See also Fears v. Bagley*, 462 F. App'x. 565, 575 (6th Cir. 2012).

Petitioner argues that trial counsel was ineffective for abandoning the intoxication defense in his closing summation and arguing instead that the prosecutor failed to prove that Petitioner was the perpetrator. The Michigan Court of Appeals rejected the claim:

> When it came to closing arguments, defense counsel, evidently convinced that the intoxication defense had effectively collapsed in light of the record that had developed during trial, reversed his focus from that reflected in his opening statement to one that now questioned whether the prosecution had presented proof beyond a reasonable doubt that defendant was the actual perpetrator. There was but a cursory and awkward mention of the intoxication defense at the very end of counsel's closing argument. Of course, the jury was certainly cognizant of the fact that defense counsel had suggested, if not entirely conceded, in his opening statement that defendant was the perpetrator. But we agree with the trial court's thoughtful remarks that the debacle was not so much the result of failures or deficiencies on the

13

> part of defense counsel as it was the existence of overwhelming and virtually indisputable evidence that defendant committed the armed robbery and did so with the requisite specific intent untainted by intoxication. While perhaps the better or more reasonable trial strategy would have been to maintain the emphasis on the intoxication defense in counsel's closing argument, we cannot conclude, given the record, that defendant would probably have been acquitted had counsel employed a more consistent strategy.

*People v. Guile*, 2015 WL 3604571, at * 4 (internal footnote omitted).

Defense counsel's decision to abandon the intoxication defense during his closing argument did not amount to deficient performance, as required to support ineffective assistance of counsel claim, in light of the evidence presented at trial that Petitioner's behavior during and after the robbery demonstrated purposeful intent on Petitioner's behalf. *See e. g. King v. Westbrooks,* 847 F.3d 788, 796–97 (6th Cir. 2017).

Finally, as mentioned above, there was no evidence that Petitioner was so intoxicated as to be unable to form the specific intent to commit the armed robbery; counsel was not ineffective in failing to present a stronger intoxication defense. *See Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986). The Court denies Petitioner's first claim.

Petitioner in his second and third claims argues that appellate counsel was ineffective for various ways in regards to challenging the scoring of Offense Variable 7 of the Michigan Sentencing Guidelines on Petitioner's appeal of right.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A

habeas court must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016)(per curiam)("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

At the time of Petitioner's sentence, OV 7—"aggravated physical abuse"—was scored at 50 points where "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Mich. Comp. Laws § 777.37 (as amended by 2002 P.A. 137)(effective April 22, 2002)). Finding such conduct in this case, the trial judge scored OV 7 at 50 points. (Tr. 9/30/02, p. 16)(ECF No. 6-6, PageID. 1042).

Petitioner's appellate counsel raised a challenge to the scoring of OV 7 on Petitioner's appeal of right. The Michigan Court of Appeals, at great length, rejected Petitioner's claim. *People v. Guile*, 2015 WL 3604571, at * 8.

Petitioner claims that appellate counsel was ineffective for failing to view a videotape of the armed robbery or use this videotape on appeal because the videotape does not show the manager of the McDonald's, Rosa Holmes, being "grabbed" or "dragged" from her office, as the Michigan Court of Appeals stated in their opinion, when ruling that the evidence supported the scoring of fifty points under OV 7. Petitioner also argues that appellate counsel should have also challenged the prosecutor's brief on appeal, because the prosecutor's brief erroneously stated that the manager of the McDonald's was grabbed and dragged. Petitioner finally argues that his appellate counsel was ineffective because he

15

failed to argue that *People v. Hardy*, 494 Mich. 430, 835 N.W.2d 340 (2013), which the Michigan Court of Appeals cited in rejecting Petitioner's sentencing guidelines claim, was inapplicable to Petitioner's case because it was decided after he committed the crime, was not made retroactive, and "abruptly" changed or expanded the law related to OV 7.

Petitioner raised these claims in his post-conviction motion for relief from judgment before the same judge who sentenced him. The sentencing judge rejected these claims. The judge concluded that even if Petitioner did not actually drag Ms. Holmes, the manager of the McDonald's, Ms. Holmes testified that Petitioner grabbed her out of her office and place a gun to her face. As Petitioner walked Ms. Holmes at gunpoint to the front of the restaurant, he continued to threaten to kill her. When Ms. Holmes was unable to open the safe, Petitioner threatened to kill her and another employee. Petitioner announced that he had an Uzi submachine gun. The judge concluded that these facts supported the scoring of fifty points under OV 7 even if appellate counsel challenged the factual basis for Petitioner grabbing and dragging Ms. Holmes from her office. *People v. Guile,* No. 02-010240-FC, * 2-4 (Genesee Cir. Cty. Ct. May 23, 2017)(ECF No. 6-14, PageID. 1447-49). The judge further concluded that there was ample evidence that the employees were placed in fear of death or dying, so as to support the scoring of OV 7 at fifty points for "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." *Id.,* at * 4-8 (ECF No. 6-14, PageID. 1449-53).

The post-conviction judge concluded that OV 7 of the Michigan Sentencing Guidelines was correctly scored under Michigan law. The Michigan appellate courts affirmed this ruling. This Court "cannot logically grant the writ based on ineffective

assistance of counsel without determining that the state court erred in its interpretation of its own law[,]"; the Court is constrained to reject Petitioner's ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

The trial judge and the Michigan appellate courts rejected Petitioner's sentencing guidelines claim. Petitioner is unable to show that he was prejudiced by his appellate counsel's purported ineffectiveness in how he chose to challenge the scoring of his sentencing guidelines. *See e.g. Coleman v. Curtin*, 425 F. App'x. 483, 485 (6th Cir. 2011). If "one is left with pure speculation on whether the outcome of ... the penalty phase could have been any different," there has been an insufficient showing of prejudice. *Baze v. Parker*, 371 F. 3d 310, 322 (6th Cir. 2004). Petitioner offered no evidence to show that the state trial court judge was inclined to impose a lesser sentence or that the Michigan appellate courts were inclined to reverse his sentence. Petitioner is unable to show that he was prejudiced by his counsel's purported ineffectiveness in how he chose to challenge the scoring of OV 7 of the Michigan Sentencing Guidelines on the appeal of right. *See Spencer v. Booker*, 254 F. App'x. 520, 525-26 (6th Cir. 2007).

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Petitioner failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

s/ Victoria A. Roberts
**HON. VICTORIA A. ROBERTS**
**Dated: 2/27/2020** **UNITED STATES DISTRICT JUDGE**